UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

No. 1:24-CR-320-RMR
Hon. Regina M. Rodriguez

UNITED STATES OF AMERICA,

                Plaintiff,

vs.

ASHLEY DANIELLE BLACKCLOUD,

                Defendant.

## MOTION TO DISMISS COUNTS AND BRIEF IN SUPPORT

I.    *Introduction*

Ashley Danielle Blackcloud asks the Court to dismiss both counts in the Indictment for failing to state an offense and on First Amendment grounds. The Indictment does not allege the offense charged and it does not allege true threat.

The basic theory of the Indictment is that the defendants hatched a plan to burn a cross in front of a racially defaced campaign sign of a black mayoral candidate, make a video of the cross burning and then disseminate the video so that it had a "viral" moment in the media, all as a way to help the mayoral candidate, whom they supported. In other words, the Indictment lays out a cross-burning hoax done to help a political candidate during a political campaign. The Indictment does not sufficiently allege the offenses charged and attempts to criminalize protected speech.

II.    *The Indictment.*

Ms. Blackcloud is charged with two counts in the Indictment. Both counts involve a violation of 18 U.S.C. § 844(e), which states:

> (e) Whoever, through the use of the mail, telephone, telegraph, or other instrument of interstate or foreign commerce, or in or affecting interstate or foreign commerce, willfully makes any threat, or maliciously conveys false information knowing the same to be false, concerning an attempt or alleged attempt being made, or to be made, to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property by means of fire or an explosive shall be imprisoned for not more than 10 years or fined under this title, or both.

Count 1 charges a Conspiracy to Commit an Offense Against the United States, The Conspiracy to Maliciously Spread Disinformation About a Cross Burning, namely a violation of 18 U.S.C. § 844(e), to willfully make a threat and maliciously convey false information about a cross burning as an attempt to intimidate a political candidate via the internet, contrary to 18 U.S.C. § 371. Count 2 charges a substantive violation of 18 U.S.C. § 844(e), for using the internet to make a threat, and to maliciously and knowingly convey false information about an alleged attempt to intimidate the candidate by a cross burning in front of a campaign sign with the "n" word on it. Indictment, Doc. 1.

The Indictment alleges many facts. It states that there was a runoff election for mayor of Colorado Springs held in May 2023. Indictment, Doc. 1, p. 2. The runoff was between two candidates: Candidate 1, who was black, and Candidate 2, who was white. The Indictment says all three defendants in this case, including Ms. Blackcloud, were residents of Colorado Springs and associated with a non-profit, minority-owned, independent media organization. *Id.*

The Indictment describes that one of the co-defendants, Derrick Bernard, had communications directly with Candidate 1 in April and May 2023 and that Mr Bernard expressed his support for Candidate 1.  Indictment, Doc. 1, ¶¶ 6(b), (f), (g), (h), (i).  In the messages, Mr. Bernard told Candidate 1 that he was "mobilizing my squadron," [b]lack ops style" to help Candidate 1 get to the "finish line."  Mr. Bernard said to Candidate 1, and to others, that they could not allow the "Klan" to "run the city" again.  *Id.*

The Indictment describes an alleged plot by the defendants to light a cross on fire in front of one of Candidate 1's campaign signs that was defaced with the "n" word, make a short video of the burning cross, and then disseminate the video to media outlets under an assumed name, expressing grief and outrage over the so-called cross burning.  The videotaped cross burning was allegedly done between 2:30 a.m. and 3:30 a.m. on April 23, 2023, in a grassy area by the intersection of two "major traffic arteries" in Colorado Springs.  Indictment, Doc. 1, ¶ 6(d).  The Indictment contains no allegation that anyone saw the cross burning in real time, other than that it alleges the defendants worked together to light the cross on fire in order to videotape it.

The Indictment alleges that later in the day on April 23, 2023, the co-defendants worked together to disseminate the 4-second cross burning video to multiple media outlets.  This included that the co-defendants sent the video to Candidate 1's campaign staff, via an email posing as a concerned citizen who was disheartened and outraged by the cross burning.  The concerned citizen email decried

3

the "hate incident" and insinuated that Candidate 2's followers carried out the cross burning in an effort to "detour citizens from voting." *Id.*, ¶ 7(g). The Indictment details messages between the co-defendants showed that they were pleased that the video was getting traction in the news and on social media. *Id.*, ¶¶ 7(j)-(m). The Indictment also listed social media posts by the defendants condemning the cross-burning incident.

Finally, the Indictment says that Candidate 1 won the runoff election on May 16, 2023. Indictment, Doc. 1, ¶ 6(i). The Indictment lists a congratulatory text message from Mr. Bernard to Candidate 1 where Mr. Bernard said to Candidate 1, "we got you through it all brother" and that they would "handle business" another time. *Id.* The Indictment recounts a text message sent from Mr. Bernard to Ms. Blackcloud with a link to apply for jobs within the city of Colorado Springs, with Mr. Bernard's statement that he wanted "favors quicker than later." *Id.,* ¶ (6)(j).

   III.   *Motions to Dismiss.*

Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure provides that motions to dismiss an indictment for defects in the indictment, including that the indictment fails to state an offense or that the statute is unconstitutional as applied, should be made prior to trial. The Court will look to the Indictment to determine if it states an offense or if its allegations show that the charged statute is unconstitutional, as applied.

   A.   **Failure to state an offense.**

An indictment is generally sufficient if it sets forth the offense in the words of the statute, so long as the statute adequately states the elements of the offense.

*United States v.* Salazar, 720 F.2d 1482, 1486 (10th Cir. 1983).  However, the court may dismiss a charged offense if the facts alleged in the indictment fail to establish the elements of the offense. *United States v. King*, 581 F.2d 800, 802 (10th Cir. 1978). "[A] pretrial dismissal is essentially a determination that, as a matter of law, the government is incapable of proving its case beyond a reasonable doubt." *United States v. Hall*, 20 F.3d 1084, 1088 (10th Cir. 1994).  The Court can look outside the four corners of the indictment to determine a motion to dismiss when there are undisputed facts not contained in the indictment. *Id.* at 1087.  In *Hall*, the Tenth Circuit affirmed dismissal of an indictment charging a violation of 18 U.S.C. § 924(c)(1) because the facts, as pled in the indictment, could not as a matter of law establish the "use" element without impermissible inferences and could not establish the "readily accessible" element without extending the statute's reach beyond that which the Tenth Circuit had ever previously approved.  More recently, the Tenth Circuit reversed dismissal of an indictment, finding that the charged bank robbery offense could encompass the facts of the offenses – the legal question of whether money from an ATM belonged to the bank at the time of the robbery – as a matter of law. *United States v. Chavez,* 9 F.4th 1223, 1330 (10th Cir. 2022).

### B. Protected speech.

As to the First Amendment, courts may entertain pretrial motions to dismiss on the basis that the conduct alleged in the indictment is protected by the First Amendment, as a matter of law. *See Dennis v. United States*, 341 U.S. 494, 514-515 (1951).  If there is no question that the defendant's speech is protected by the First

Amendment, the court may dismiss the charge. *United States v, Viefhaus*, 168 F.3d 392, 397 (10th Cir. 1999) (citing *United States v. Malik*, 16 F.3d 45, 51 (2nd Cir. 1994)). If there is no way certain speech can be interpreted as a true threat, the speech is protected by the First Amendment. For example, in *Watts v. United States*, 394 U.S. 705 (1969), the Supreme Court held that as a matter of law, the defendant's speech – "[i]f they ever make me carry a rifle the first man I want to get in my sights is L.B.J" – was protected by the First Amendment because it could not be interpreted "as anything but "a kind of very crude offensive method of stating a political opposition to the President." *Id*. at 708.

In *Viefhaus*, the defendant was a white supremacist who recorded a message on an answering machine, threatening to activate bombs in 15 cities unless "white warriors" acted against the federal government. The defendant's message claimed to repeat the words of a "high-ranking revolutionary commander" and said that "the war is starting with or without you so lace up your jump boots."

Compare *Watts*, where the Supreme Court decided as a matter of law, that the speech was protected, to *Viefhaus,* where the Tenth Circuit said it could not determine, as a matter of law pretrial, that the bomb threat was protected political speech. Whether it was political speech was a matter for the jury to decide because of the bomb threat and the call to arms. *Viefhaus*, 168 F.3d at 397. Thus, *Watts* illustrates a scenario where a pretrial determination that the conduct alleged in the indictment is protected free speech requiring dismissal and *Viefhaus* illustrates a scenario where the issue of protected speech is a jury issue.

IV.  *Argument.*

The elements of § 844(e) are that:

1. The defendant willfully made a threat, or the defendant maliciously conveyed false information about a threat being made or to be made;
2. The threat was to kill, injure or intimidate any individual or unlawfully to damage or destroy any building, vehicle, real property or personal property by using fire or an explosive;
3. The defendant used the mail, telephone, telegraph, or other instrument of interstate or foreign commerce to communicate the threat or to communicate the false information about a threat.

In order to avoid running afoul of the First Amendment, threats made under this section must be a "true threat," which is a "serious threat as distinguished from words as mere political argument, idle talk or jest." *Viefhaus*, 168 F.3d at 395 (citing *United States v. Leaverton*, 835 F.2d 254, 257 (10th Cir. 1987)).  "'Threat' is a declaration of intention, purpose, design, goal, or determination to inflict punishment, loss, or pain on another, or to injure another or his property by the commission of some unlawful act."  *Id.*

In any true threat prosecution, the government must prove that the defendant intended to make the recipient of the threat feel threatened or intended to instill fear in the recipient of the threat.  *United States v. Heineman*, 767 F.3d 970, 977 (10th Cir. 2014) (citing *Virginia v. Black*, 538 U.S. 343 (2003.  Burning a cross is not *per se* a true threat nor is it *prima facie* evidence of a true threat, though given its history of use by the Ku Klux Klan to intimidate, it can amount to a true threat if the cross burner intends the recipient of the message to fear for their lives.  *Black*, 538 U.S. at 358.  Cross burnings that are not meant to threaten or intimidate, but that are

7

instead meant to spark anger, resentment or outrage, are not true threats. *Black*, 538 U.S. at 367.

A conspiracy as charged under § 371 requires proof that the defendant agreed with at least one other person to violate the law, that there was at least one overt act furthering the conspiracy's objective, the defendant knowingly and voluntarily joined the conspiracy knowing it's essential objective and there was interdependence among the members of the conspiracy. A conspiracy to commit a particular substantive offense requires at least the degree of criminal intent necessary to commit the underlying offense. In this case, a required element for the § 371 conspiracy is that the defendant intended that the recipient of the threat, or fake threat, feel intimidated or feel fear. *United States v. Feola*, 420 U.S. 671 (1975).

Thus, in addition to the elements outline above for § 844(e) and § 371, both counts here require that the government plead, and prove, not only the intentional or reckless making of a threat or conveying information about a false threat, but also that the specific intent of the threat was to make the recipient of the threat feel intimidated or feel fear.

A word about the use of § 844(e) here. 18 U.S.C. § 844(e) was enacted in 1970 to deal with bomb threats. Title IX of the Organized Crime Control Act of 1970 was passed to strengthen federal laws with respect to the use of explosives. *See* Organized Crime Control Act of 1970, H.R. Rep. No. 91-1549. The House Report says plainly that § 844(e) was only intended to outlaw threats by explosives:

> Section 844(e) is a revision of present § 837(d) of title 18, United States Code. It is designed to deal more specifically with *bomb threats* and to

8

> increase the penalties applicable to such threats…Because of the increased penalty, and because of the particularly severe problems caused by *bomb threats*, § 844(e) is confined to information or threats concerning *explosives*.

*Id.* at 4045-46 (emphasis added). The Anti-Arson Act of 1982 amended § 844(e) to add the word "fire." Thus, § 844(e) is now aimed at arson threats and bomb threats, whether the threats are real or fake.

In our circuit, § 844(e) has been used to prosecute bomb threats, real or fake. *See Viefhaus, supra*; *Leaverton, supra* (sending a letter addressed to "Senator Bob Dole, U.S. Senate Chamber, Washington, D.C. 20204," said letter containing a "simulated improvised explosive device" prosecuted under § 844(e)). We do not find any cases in our circuit where § 844(e) was used to prosecute a real, or fake, arson. In other circuits, § 844(e) has been used to prosecute threats of arson aimed at other's people's property. *United States v. Doggart*, 947 F.3d 879 (6th Cir. 2020) (threat by phone to burn down a school and mosque prosecuted under § 844(e)); *United States v. Schmindlin*, 441 Fed. Appx. 338 (6th Cir. 2011) (telephone threats to burn down someone's house prosecuted under § 844(e)); *United States v. Reynolds*, 432 F.3d 821 (8th Cir. 2005) (§ 844(e) used to prosecute defendant who set fire to hay bales on victim's property and victim's residence before making a threatening phone call); *United States v. Larsen*, 1995 U.S.App. LEXIS 24540 (9th Cir. 1995) (letters threatening to set fires on a hot, windy day in Los Angeles prosecuted under § 844(e)). Symbolic burnings of one's own property, like the cross burning alleged here, have never been prosecuted under § 844(e), as best as we can tell.

Cross burning cases in this circuit have not utilized § 844(e). *See United States v. Magelby*, 420 F.3d 1136 (10th Cir. 2005) (cross burning charged under 18 U.S.C. § 241, conspiracy against rights, and 42 U.S.C. § 3631, housing discrimination); *United States v. Whitney*, 229 F.3d 1296 (10th Cir. 2000) (same). We have not found a single federal cross burning case where § 844(e) is the charged offense. In some federal cross burning cases, which as noted above are typically charged under § 241, § 3631 or 18 U.S.C. § 249 (hate crime statute), the penalty enhancement provisions of 18 U.S.C. § 844(h) (enhancements for committing a federal felony by the use of fire) are used, but we can find no case in this circuit, or any circuit or district court, where § 844(e) has been used to prosecute a cross burning offense.

Using § 844(e) to prosecute a cross burning is novel. The legislative history of the statute shows that a cross burning was not intended to fall under the proscription of § 844(e). A cross burning is not a bomb threat nor is it an arson threat. It is a symbolic burning of one's own property. But the more commonly used statutes to prosecute cross burnings, like §§ 241, 249, do not cover what § 844(e) covers and what the government needs here in order to bring a charge: hoaxes. However, it is precisely because the Indictment lays out a scheme that was a hoax - The Conspiracy to Maliciously Spread Disinformation About a Cross Burning – that the Indictment must be dismissed. The Indictment lays out conduct that was hoax because there was no intent to threaten.

The Indictment illustrates that an intent to threaten or cause fear was not the point of this cross burning. According to the Indictment, the intent of the cross

burning was to help a political candidate by sparking outrage. Fake threats, such as fake bomb threats, are threats that can be prosecuted under § 844(e) if they are "true threats" intended to threaten or cause fear, regardless of whether the defendant intends to carry out the bomb threat. But in those cases where there is a fake threat, what is fake about the threat is that there never will be a bomb or an arson. The threats are fake because the defendant intends to threaten or cause fear but does not intend to carry out the threatened activity.

But in this case, the fire event did happen. A cross was burned. What makes this cross burning a fake threat is not that the activity, i.e. the cross burning, was never going to happen. It is a fake threat because it was not intended as a threat. It was staged as a political publicity stunt. It was not directed as a true threat to Candidate 1, or to anyone. It lacked the necessary intent to prosecute under § 844(e) and the government's charge here falls under the weight of its own theory.

**A. The Indictment does not state an § 844(e) offense because it does not allege that the intent of the cross burning was to intimidate or instill fear in Candidate 1, or anyone.**

As noted above, § 844(e) requires a showing that a true threat was made. To be a true threat, the government must plead, and prove, that the defendant intended to make the recipient of the threat feel threatened or intended to instill fear in the recipient of the threat. A § 371 conspiracy requires a showing of the same intent necessary for the underlying offense. Both counts have as an element that the intent of the threat, or fake threat, was to make the recipient feel threatened or feel fear.

The Indictment nowhere alleges that Ms. Blackcloud participated in the cross-burning, or dissemination of the cross-burning video, with the intent that Candidate

11

1 feel threatened or that the cross burning instill fear in Candidate 1. Indeed, the facts outlined in the Indictment allege the opposite: that Mr. Bernard supported Candidate 1; that Mr. Bernard told Ms. Blackcloud that he had a plan because they could not let the Klan retake Colorado Springs; that a cross was burned in a grassy area off of a roadway in the middle of the night; that a video of it was made; that the video was sent to media outlets condemning the cross burning and encouraging voters to turn out; that Candidate 1 won the election; and, that Mr. Bernard wanted a favor.

Nowhere in the factual recitations in the Indictment, or even just using boilerplate language, does the Indictment allege that Ms. Blackcloud burned a cross or participated in disseminating the video to make anyone feel threatened or afraid. Both counts fail to state an offense due to the failure of the Indictment to state, or state facts establishing, that the intent of Ms. Blackcloud was to threaten or instill fear. Both counts should be dismissed because the Indictment does not allege the specific intent element necessary for both offenses.

**B. The Indictment shows that the cross burning and video were not a true threat, but protected speech.**

The Court can decide as a matter of law that the cross-burning here was protected free speech because as laid out in the Indictment, the cross burning cannot be interpreted as a true threat: it was a political prank intended to inspire anger and outrage, not fear and intimidation.

The Court does not need a treatise on the First Amendment but, the First Amendment to the United States Constitution protects symbolic or expressive conduct as well as actual speech. *Black,* 588 U.S. at 358. First Amendment

12

protections are not absolute, and the government may regulate certain categories of expression in ways that are not inconsistent with the First Amendment.  Fighting words, obscenity and true threats are not protected speech.

In the seminal First Amendment cross burning case of *Virginia v. Black*, *supra*, the Supreme Court noted that cross burning has a history of being used as a means to intimidate and cause fear.  But the Court also found that not all cross burnings are meant to cause fear or intimidate.  It said that some cross burnings are meant to be symbols of shared ideology or designed to create anger or resentment.  *Black*, 588 U.S. at 367.  The Court found that cross burnings done at a political rally can be distinguished from those done on a neighbor's lawn; that cross burnings directed at an individual can be differentiated from cross burnings directed at a group; and, that cross burnings done on property with the owner's acquiescence can be differentiated from cross burnings done on property without the owner's permission.  *Id.*  In other words, whether a particular cross burning amounts to a true threat that can be criminalized depends on the facts and circumstances surrounding the cross burning.  Therefore, the Court in *Black* held that cross burnings can only give rise to prosecution if the facts and circumstances show that the cross burning was done with the intent to intimidate.

As described in the Indictment, the cross-burning itself was done in the middle of the night on the side of a public roadway.  It was not burned in anyone's yard, unlike the scenarios in *Magelby* and *Whitney, supra,* where crosses were burned in the yards of the homes of black people.  As outlined in the Indictment, the whole

13

cross-burning itself was done for the purpose of making a video to disseminate it to the media. There are no facts in the Indictment that suggest the actual cross burning was meant to be witnessed by anyone or that it was actually witnessed by anyone.

The Indictment describes that the public, and Candidate 1, only became aware of the cross burning when the video was disseminated via email. But setting aside the question of whether a 4 second video of a cross burning done at an unknown place and time sent to the media can ever amount to a true threat, the circumstances of the dissemination of the video show that it was not done with the purpose of intimidating or threatening anyone. The video was disseminated, according to the Indictment, via an email from a "concerned citizen" who expressed that they were disheartened and outraged by the cross burning. The email decried the "hate incident" and insinuated that Candidate 2's followers carried out the cross burning in an effort to "detour citizens from voting." It was not disseminated to intimidate or threaten, it was disseminated to cause anger and outrage as a way to mobilize voters for Candidate 1, per the plain text of the email disseminating it outlined in the Indictment.

Compare this to the defendant in *Viefhaus*, who communicated what ended up being a false bomb threat from what he said was a third party. When addressing a First Amendment challenge to the prosecution, the Tenth Circuit said that in order for the threat made by a third party and repeated by *Viefhaus* to be a true threat, the circumstances surrounding *Viefhaus's* communication of the third party's threat had to show that *Viefhaus* had adopted the third party's threat and was communicating his own intent, purpose and goal by repeating the third party's threat. *Viefhaus*, 168

F.3d at 396-397.  The court said that repeating a threat for "informational purposes" would not rise to the level of an § 844(e) prosecution.  In *Viefhaus*, the Tenth Circuit found that the language associated with the repeating of the third-party's threat to bomb 15 cities showed that *Viefhaus* had adopted the threat – "the war is starting with or without you so lace up your jump boots."  *Id.*  Thus, the Tenth Circuit affirmed the district court's denial of *Viefhaus's* motion to dismiss.

But this Indictment is different.  It alleges that when the defendants emailed the video to media outlets and put it on social media, they did so by using language that expressly *disavowed* – not adopted – the cross burning.  Under the circumstances outlined in the Indictment and per the rationale in *Viefhaus*, the Court can easily find that the dissemination of the video was not to threaten, and therefore it is not a true threat but protected free speech.

WHEREFORE, Ashley Blackcloud requests the Court to dismiss both counts against her.

Dated:   February 5, 2025

Respectfully Submitted,

Attorney for Defendant Blackcloud

s/ Britt M. Cobb

_____

Britt M. Cobb
WILLEY & CHAMBERLAIN
300 Ottawa Avenue, N.W., Suite 810
Grand Rapids, Michigan 49503
3570 E. 12th Avenue, Suite 200
Denver, Colorado 80206
(616) 458-2212
bmc@willeychamberlain.com