IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez

Criminal Case No. 24-cr-00320-RMR

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **DERRICK PATRICK BERNARD, JR.,**
2. **ASHLEY DANIELLE BLACKCLOUD, and**
3. DEANNA CRYSTAL WEST,

    Defendants.

## ORDER

On November 6, 2024, the Grand Jury returned an Indictment against Defendants Derrick Patrick Bernard, Jr., Ashley Danielle Blackcloud, and Deanna Crystal West[1] (collectively "Defendants") charging them with: Count One: Conspiracy to Commit an Offense Against the United States, namely a violation of 18 U.S.C. § 844(e), to willfully make a threat and maliciously convey false information about a cross burning as an attempt to intimidate a political candidate via the internet, contrary to 18 U.S.C. § 371 and punishable by up to 5 years of imprisonment; and Count Two: substantive violation of 18 U.S.C. § 844(e), punishable by up to 10 years of imprisonment, for using the internet to

---

[1] On March 11, 2025, Defendant Deanna West entered a plea of guilty to Count 1 of the Indictment. ECF No. 109.

make a threat, and to maliciously and knowingly convey false information about an alleged attempt to intimidate the candidate by a cross burning. ECF No. 1.

This matter is before the Court on: (1) Defendant Blackcloud's Motion to Dismiss Counts and Brief in Support (ECF No. 71); Defendant Bernard's Motion to Dismiss Due to First Amendment Violation (ECF No. 82) (collectively "Motions to Dismiss"); and Defendant Blackcloud's Motion to Strike and Brief in Support or for Leave to Reply ("Motion to Strike") (ECF No. 106). For the reasons stated below, the Court concludes that, based on the facts alleged in the Indictment, a reasonable jury could find that Defendants Blackcloud and Bernard communicated a true threat. Accordingly, the court DENIES the Motions to Dismiss and GRANTS the Motion to Strike.

## I. BACKGROUND

Colorado Springs, Colorado, held an election for mayor of the city on April 4, 2024. ECF No. 1 ¶ 2. CANDIDATE 1 is black and CANDIDATE 2 is white. *Id.* There was no clear winner, so a runoff election was scheduled for May 16, 2023. *Id.* Defendants supported CANDIDATE 1. The Indictment alleges that the Defendants devised a plan to help CANDIDATE 1 win the runoff election. *Id.* ¶ 4. In the early morning hours of April 23, 2023, the Defendants defaced a political sign with CANDIDATE 1's name on it by using red spray paint to write the N-word on it. *Id.* ¶ 6. The Defendants then staged a burning cross in front of the sign and videotaped it. *Id.* Later that same day, the Defendants created a fake email account, posing as a concerned citizen, and sent the video, along with an email referring to hate crimes, to media outlets and CANDIDATE 1's campaign. *Id.* ¶ 7. According to Defendant Bernard, Defendants' actions were "specifically designed

to generate voter outrage and support for a candidate" they actively backed. ECF No. 82 at 1.

After an investigation into bias-motivated criminal mischief by the Colorado Springs Police Department, the government charged the Defendants with conspiracy to commit offense or to defraud the United States in violation of 18 U.S.C. § 371 and using instrumentalities of interstate commerce to maliciously convey false information to intimidate someone by means of fire in violation of 18 U.S.C. §§ 844(e), 2. For the government to succeed on a § 844(e) charge, it must prove that the communication in question was a true threat lying outside of First Amendment protection. *United States v. Wheeler*, 776 F.3d 736, 742–43 (10th Cir. 2015). In Defendant Blackcloud and Defendant Bernard's view, the communication was not a true threat, but rather protected political speech. Both moved to dismiss the threatening-communication counts for failing to state an offense under Fed. R. Crim. P. 12(b)(3) and First Amendment grounds.

## II.     LEGAL STANDARD

An indictment may be dismissed if the facts alleged in the indictment fail to invoke the court's jurisdiction or state an offense. Fed. R. Crim. P. 12(b). In this Circuit, an indictment is sufficient if it:

> (1) contains the essential elements of the offense intended to be charged, (2) sufficiently apprises the accused of what he must be prepared to defend against, and (3) enables the accused to plead an acquittal or conviction under the indictment as a bar to any subsequent prosecution for the same offense.

*United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994). Typically, a court ruling on a motion to dismiss is limited to considering the allegations in the indictment. *Id*. But under Tenth Circuit precedent, the court may consider evidence "beyond the four corners of the indictment" if "the underlying facts were essentially undisputed." *Id.*

To support a conviction under § 844(e), the government must allege and prove three elements:

1. The defendant willfully made a threat, or the defendant maliciously conveyed false information about a threat being made or to be made;

2. The threat was to kill, injure or intimidate any individual or unlawfully to damage or destroy any building, vehicle, real property or personal property by using fire or an explosive;

3. The defendant used the mail, telephone, telegraph, or other instrument of interstate or foreign commerce to communicate the threat or to communicate the false information about a threat.

Eleventh Circuit Pattern Jury Instruction No. O27 (modified); *United States v. Williams*, 690 F.3d 1056 (8th Cir. 2012).[2] Like all threat statutes, § 844(e) applies only to true

---

[2] The Court turned to sources outside the Tenth Circuit for its analysis because: 1) the Eleventh Circuit is the only Circuit with a pattern jury instruction for 18 U.S.C. § 844(e), and 2) the most recent 18 U.S.C. § 844(e) case in the Tenth Circuit is *United States v. Viefhaus*, 168 F.3d 392 (10th Cir. 1999), which predates the Supreme Court's analysis regarding true threats and cross burnings in *Virginia v. Black*, 538 U.S. 343 (2003). In *United States v. Williams*, the Eighth Circuit discussed the Supreme Court's analysis in *Black* and the elements of an 18 U.S.C. § 844(e) violation. 690 F.3d 1056 (8th Cir. 2012) (stating, before the Supreme Court's decision in *Counterman v. Colorado*, 600 U.S. 66 (2023), that the "objective test for determining whether a communication is a true threat, adopted by the Eighth Circuit post-*Black*, does not consider the subjective intent of the speaker").
.

threats, which fall outside the scope of First Amendment protection. *Williams*, 690 F.3d at 1062.

### III.   ANALYSIS

#### A. Insufficiency of Indictment

Defendant Blackcloud's Motion to Dismiss alleges the Indictment fails to state an offense under Fed. R. Crim. P. 12(b). ECF No. 71 at 4. As set forth above, the Indictment in this case charges Defendants with conspiracy (18 U.S.C. § 371) to violate 18 U.S.C. § 844(e). "Section 844(e) requires that the criminalized threats be conveyed 'willfully,' or that the false information (known to be false) be conveyed 'maliciously.'" *Williams*, 690 F.3d at 1063. "[T]he false statement of fact must be made in a context where it has the propensity to inflict some public or private harm beyond the mere transmission of false information, regardless of whether the harm is actually inflicted." *Id.* "And on its face, as relevant here, § 844(e) generally requires proof that the threat or false information concern an attempt or alleged attempt to kill, injure, or intimidate an individual, or damage or destroy real property by means of [fire]." *Id.* The Indictment in the case alleges that Defendants:

> [D]id knowingly and voluntarily conspire and agree together and with each other to commit an offense against the laws of the United States namely, a violation of 18 U.S.C. § 844(e), through the use of instrumentalities of interstate commerce—the internet and email—and in and affecting interstate commerce by willfully making a threat and maliciously conveying false information knowing the same to be false concerning an alleged

> attempt being made to intimidate an individual, CANDIDATE 1, by means of fire in the form of a burning cross placed in front of a campaign sign for CANDIDATE 1 defaced with the word 'nigger.'

ECF No. 1 ¶ 4. Thus, the Court finds that the Indictment in this case includes sufficient facts to satisfy each of the elements of 18 U.S.C. § 371 and 18 U.S.C. § 844(e).

The Court also finds that the Indictment apprises the Defendants of what they must be prepared to defend against. The Indictment specifically identifies the alleged threat (burning a cross in front of the defaced political sign with CANDIDATE 1's name), the mechanism used to make the threat (sending the video of the cross burning via email), and the target of the threat (CANDIDATE 1). ECF No. 1. The Court has little doubt that the Defendants have sufficient information to prepare a defense.

Finally, the Court finds that the Indictment is specific enough to allow the Defendants to utilize any acquittal or conviction as a bar to subsequent prosecution. The Indictment identified the specific dates and times of when the burning of the cross took place and when the emails with the threat were disseminated. Therefore, the Court finds that the Indictment in this case is specific enough to satisfy the Federal Rules of Criminal Procedure.

### B. Unconstitutional as Applied

Defendants' primary argument in the Motions to Dismiss is that 18 U.S.C. § 844(e) is unconstitutional as applied in this case because their actions (burning the cross and disseminating a video of the burning cross) did not constitute a "true threat." ECF Nos. 71 at 1, 82 at 1. Defendants argue that their actions amounted to political speech protected

by the First Amendment. In *United States v. Viefhaus*, the Tenth Circuit rejected a similar argument in a § 844(e) case that the defendant's comments amounted only to "vulgar political speech" protected by the First Amendment by distinguishing a "true threat" from "mere political argument, idle talk or jest." 168 F.3d 392, 395 (10th Cir. 1999) (affirming the district court's denial of defendant's motion to dismiss).

The government suggests that the court can deny Defendants' Motions to Dismiss because the question of whether a communication constitutes a true threat is a jury question. ECF No. 91 at 3. The government is correct that "absent an unusual set of facts, the question whether statements amount to true threats is a question generally best left to a jury." *Wheeler*, 776 F.3d at 742. But "if there is no question that a defendant's speech is protected by the First Amendment, the court may dismiss the charge as a matter of law." *Viefhaus*, 168 F.3d at 397. Thus, the court must consider whether, based on the allegations in the Indictment, a reasonable juror could find that the Defendants' communication was a true threat.

In *Virginia v. Black*, the Supreme Court held that the First Amendment permits the government to regulate "cross burnings done with the intent to intimidate because burning a cross is a particularly virulent form of intimidation." 538 U.S. 343, 363 (2003). In *United States v. Heineman*, the Tenth Circuit analyzed the holding in *Black*, rejecting an objective standard—the effect on a reasonable listener of the speech—for construing the definition of a true threat and instead requiring subjective intent. 767 F.3d 970, 978-79 (10th Cir. 2014) ("We read *Black* as establishing that a defendant can be constitutionally convicted of making a true threat only if the defendant intended the recipient of the threat to feel

7

threatened."). *Heineman* pre-dates the Supreme Court's decision in *Counterman v. Colorado*, 600 U.S. 66 (2023), and does not involve an 18 U.S.C. § 844(e) violation. The Honorable Bobby Baldock's concurrence in *Heineman* argues that the Tenth Circuit's "definition of a 'threat' in *Viefhaus* implicitly contains a subjective intent component." *Heineman*, 767 F.3d at 984 (Baldock, J. concurring).

Neither Defendant discusses *Counterman v. Colorado*, the most recent Supreme Court case on what constitutes a "true threat," in their Motions to Dismiss. 600 U.S. at 66. In *Counterman*, the Supreme Court held that the First Amendment requires proof that the defendant has some subjective understanding of the threatening nature of his statements. *Counterman*, 600 U.S. at 69. Even though *Counterman* did not involve cross burnings or 18 U.S.C. § 844(e), but instead dealt with a state conviction of stalking and the sending of 100s of threatening Facebook messages, the Supreme Court's analysis in *Counterman* builds on its analysis in *Black* and is instructive.

In *Counterman*, the Supreme Court re-emphasized that "True threats of violence [] lie outside the bounds of the First Amendment's protection." 600 U.S. at 72. "The 'true' in that term distinguishes what is at issue from jests, '[political] hyperbole,' or other statements that when taken in context do not convey a real possibility that violence will follow (say, 'I am going to kill you for showing up late')." *Id.* at 74 (quoting *Watts v. United States*, 394 U.S. 705, 708 (1969)). True threats instead "encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Black*, 538 U.S. at 359. It "subject[s] individuals to 'fear of violence' and to the many kinds of

8

'disruption that fear engenders.'" *Counterman*, 600 U.S. at 74 (quoting *Black*, 538 U.S. at 360). "Whether the speaker is aware of, and intends to convey, the threatening aspect of the message is not part of what makes a statement a threat." *Id.* (citing *Elonis v. United States*, 575 U.S. 723, 733 (2015). "The existence of a threat depends not on the mental state of the author, but on what the statement conveys to the person on the other end." *Id.* (internal quotation marks omitted). That said, "a statement can count as [a true threat] based solely on its objective content." *Id.* at 72.

In *Counterman*, the Supreme Court held that the *mens rea* required to prove a true threat is recklessness, meaning that "a speaker is aware that others could regard his statements as threatening violence and delivers them anyway." *Id.* at 79 (internal quotation marks omitted). The Colorado statute at issue in *Counterman* did not include a *mens rea*. It is important to note that the Supreme Court held that a reckless standard was sufficient to ensure compliance with constitutional First Amendment standards when a statute is silent regarding the *mens rea*. *Id.* Here, the statute is not silent. 18 U.S.C. § 844(e) requires that the government prove that the defendant acted knowingly, willfully, and maliciously, a higher *mens rea* standard. "A person acts knowingly when he is aware that a result is practically certain to follow—so here, when he knows to a practical certainty that others will take his words as threats." *Counterman*, 600 U.S. at 79. (internal quotation marks omitted). Maliciously means to "act[] with intent to vex, annoy, or injure another or with an intent to do a wrongful act." *Williams*, 690 F.3d at 1064.

A reasonable jury could find that the Defendants' communication fits into the definition of a true threat. The Defendants spray-painted the N-word on a political sign that represented CANDIDATE 1 because it had his name on it. They placed a burning cross in front of the defaced political sign with CANDIDATE 1's name on it and took a video. Defendants then created a fake email account to disseminate the video along with an email to CANDIDATE 1 and media outlets. The email described what was depicted in the video—"To my surprise and disgust it was a cross on fire in front of running candidate's sign for Mayor. Looking past the flames I see it's Yemi Mobalade's sign with the word sprayed painted across in red 'NIGGER'!" ECF No. 1 at 10. The email also included language regarding hate-crime tactics used to harass and intimidate candidates and voters in elections. *Id.*

Defendants argue that they did not intend to threaten CANDIDATE 1 but instead intended to support his campaign. Defendant Bernard argues that "the distribution of the video actively disavowed and condemned the cross burning: (1) Expressed outrage at the act; (2) Blamed political opponents; (3) Urged support for Candidate 1; and (4) sought to mobilize voters" and therefore the context of the communication was "political theater." ECF No. 82 at 10. Defendant Bernard argues three theories that demonstrate the alleged conduct was protected political expression. *Id.* at 11. First, he argues the conduct was political hyperbole, citing *Watts*, 394 U.S at 708. In Watts, an eighteen-year-old Vietnam draftee, in discussing police brutality at a public rally, remarked, "If they ever make me carry a rifle the first man I want to get in my sights is L.B.J." *Id.* at 706. The Supreme Court overturned Watts' conviction for making a threat against the President under 18

10

U.S.C. § 871(c), holding that the government must prove the defendant made a "true threat," not just "political hyperbole." *Id.* at 708. Second, Defendant Bernard argues that the conduct was political movement speech, citing *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 902 (1982). In *Claiborne Hardware Co.*, the Supreme Court held that a boycott organizer whose speeches referred to violence was entitled to protection of the First Amendment. *Id.* at 929. Finally, he relies on *Black*, in which the Supreme Court acknowledged "the act of burning a cross may mean that a person is engaging in constitutionally proscribable intimidation. But that same act may mean only that the person is engaged in core political speech." *Id.* at 365. What these three cases demonstrate is that the context of the conduct is key. It is up to the jury to determine whether the cross burning was a true threat or merely political speech. *Viefhaus*, 168 F.3d at 397 ("We consistently have held that whether a defendant's statement is a true threat or mere political speech is a question for the jury."); *United States v. Leaverton*, 835 F.2d 254, 257 (10th Cir. 1987) ("[T]he question of whether a defendant's statement is a 'true threat' or a 'political speech' is generally a jury question, and the mere fact that a particular statement may have 'political overtones' does not mean that it cannot, at the same time, constitute a 'true threat.'").

The reference to hate crimes in the email indicates that the Defendants were aware that others who saw the video of the burning cross in front of the defaced political sign would, or should, view it as a threat or intimidation to CANDIDATE 1 and/or his supporters. It's not clear that others who saw the video understood the context that was intended. "The existence of a threat depends not on the mental state of the author, but

on what the statement conveys to the person on the other end." *Counterman*, 600 U.S. at 74 (internal marks quotation omitted). CANDIDATE 1 may testify at trial as to what the Defendants' communication conveyed to him. A reasonable jury could find that Defendants meant their communication not as "political hyperbole" or "political theater" but rather as statements "convey[ing] a real possibility that violence will follow." *Counterman*, 600 U.S. at 74 (quoting *Watts*, 394 U.S. at 708).

In sum, the Court finds that this is not a case where the statements made by the Defendants were so clearly protected by the First Amendment that the Court can hold, as a matter of law, that they did not constitute a true threat. Instead, the Court finds that "whether a defendant's statement is a true threat or mere political speech is a question for the jury." *Viefhaus*, 168 F.3d at 397. Considering all of the relevant factors, the Court has little difficulty concluding that a reasonable juror could find that the Defendants' comments were a true threat. As such, this issue must be left for the jury to resolve.

### C. Motion to Strike

In its Response to Defendant Blackcloud's Motion to Dismiss, the government attached an opinion letter from its expert. ECF No. 91-1. The Court did not consider the opinion letter because the Court limited its review to the allegations within the four corners of the Indictment. *Hall*, 20 F.3d at 1087. ECF No. 91-1. Therefore, Defendant Blackcloud's Motion to Strike (ECF No. 106) is **GRANTED**.

### IV. CONCLUSION

For the foregoing reasons, the Motions to Dismiss (ECF Nos. 71, 82) are **DENIED,** and the Motion to Strike (ECF No. 106) is **GRANTED.**

DATED: May 9, 2025

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge